NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0333n.06
Filed: May 11, 2007

No. 06-3427

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL HANNING LORIZ and CARA FRANCKE LORIZ | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| V. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| JOHN B. CONNAUGHTON, *et al*, | ) ) | |
| Defendants-Appellees. | ) ) | |

Before: **MERRITT and MARTIN, Circuit Judges; FORESTER, Senior District Judge.**[*]

**KARL S. FORESTER, Senior District Judge.** The Petitioners-Appellants, Michael Hanning Loriz and Cara Francke Loriz, *pro se*, filed a civil rights complaint against 25 public and private sector individuals, alleging various violations of their constitutional rights. The district court granted the motions to dismiss and motion for judgment on the pleadings filed by some of the defendants, and dismissed, *sua sponte*, the remaining defendants. This timely appeal followed.

I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the Lorizes purchased a 45-acre farm in Butler County, Ohio. On the farm, the

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Lorizes established a hardwood veneer tree business and built a 5,000 square foot home with a professional woodworking shop in the basement, along with a barn and large shed. After the Lorizes purchased the Butler County farm, their neighbors, defendants Charles Keller and Michael Simmons, applied for a zoning variance in order to operate a commercial bird hunting operation, including a shooting range, on the lot adjacent to the Lorizes' property. The Ohio Department of Natural Resources' Division of Wildlife subsequently approved various permit applications by Keller and Simmons to commence operation of their hunting business, which opened in January 2001.

In March 2001, the Butler County Zoning Department applied for a temporary restraining order to halt the operation of the hunting business, but the petition was denied. The Lorizes then filed a civil action in the Court of Common Pleas of Butler County, Ohio against Keller, Simmons, and others, alleging that the operation of the shooting range constituted an unlawful nuisance and claiming that the hunting business resulted in their loss of the quiet enjoyment of their property. Apparently, this state court litigation is ongoing.

The Lorizes allege that in April 2001, the Butler County Board of Zoning Appeals (the "BZA") found Keller and Simmons in violation of county zoning resolutions. However, on July 17, 2001 and February 23, 2003, the BZA approved conditional use permits allowing the hunting business to continue operation. The BZA did, however, establish conditions for the shooting range, including requiring a 300 foot buffer zone between the Lorizes' property and the range activities. The Lorizes contend that the BZA-imposed conditions are insufficient to protect them and their property.

The Lorizes appealed the decision of the BZA to the Butler County Court of Common Pleas. This court remanded the matter to the BZA for further proceedings and ordered the BZA to submit

written findings of fact to the Court of Common Pleas. On remand, the BZA conducted a hearing and heard additional testimony, then filed its Conclusions of Fact with the Court of Common Pleas. On April 11, 2003, the Court of Common Pleas affirmed the BZA's decision granting a conditional use permit to operate the shooting range. On appeal, the Ohio Court of Appeals for the Twelfth District affirmed the decision of the Court of Common Pleas.

On May 4, 2005, the Lorizes commenced this civil action. Essentially, the Lorizes allege that the Ohio Division of Wildlife, the Butler County Board of Zoning Appeals, and the Ohio courts improperly approved a commercial shooting range to be operated adjacent to the Lorizes' residence and tree farm. The named defendants are the owners of the shooting range and their attorney, the Ohio Court of Appeals Judges who presided over the Lorizes' appeal, various Butler County officials, and the Ohio Division of Wildlife Chief.[1] The Lorizes seek compensatory damages, as well as declaratory and injunctive relief; specifically:

(1)     a declaratory judgment establishing that the BZA approval of the subject shooting range was unlawful and unconstitutional, and a permanent injunction against the BZA from permitting shooting range operations as a conditional use;

(2)     a permanent injunction against defendant Gray from permitting any shotgun shooting operations, public or private, including the subject shooting range that are not in

_____

[1]The named defendants include: the operators of the commercial shooting range, Charles Keller, Christopher Keller, Michael Simmons, and Ridge Wind Quail Hunts, LLC, and their attorney, John B. Connaughton; the members of the Butler County Board of Zoning Appeals, Lee Steenken, Thomas Bevington, Gary Salman, John Zboril, Walt Filpt, and Alan Daniel; the Butler County Commissioners, Michael A. Fox, Gregory Jolivette, and Charles R. Furmon; and Judges of the Ohio Court of Appeals for the Twelfth Appellate District, the Honorable Anthony Valen, the Honorable William W. Young, and the Honorable Steven W. Powell; Butler County Warrant Officer, Thomas Turner; Butler County Sheriff, Richard K. Jones; Butler County Chief Deputy Sheriff, Anthony E. Dwyer, Butler County Prosecuting Attorney, Robin Piper, Butler County Assistance Prosecuting Attorney, Roger Gates; Butler County Chief Zoning Inspector, William Balinsinger, Bulter County Zoning Inspector, James M. Fox; and Ohio Department of Natural Resources Wildlife Division Chief, Steven A. Gray.

compliance with the National Rifle Association ballistic guidelines for setback from all lot lines;

(3)     a diligent and thorough investigation by the United States Attorney into corrupt practices within the Butler County Sheriff, Prosecutor, Judicial, and Executive departments;

(4)     payment of the fair market value (prior to the shooting range) for Lorizes' residence and property, and assumption of all liabilities for lead contamination of the Lorizes' property;

(5)     money damages (incidental and punitive) in the amount of $10,000,000; and

(6)     any further relief the Court deems appropriate.

In response to the Lorizes' Complaint, Defendants Valen, Young, Powell and Connaughton filed a motion to dismiss. Defendants Keller, Keller, Simmons, and Ridge Wind Quail Hunts, L.L.C. filed a separate motion to dismiss, and Defendant Gray filed a motion for judgment on the pleadings. The remaining defendants filed an answer.

This matter was referred to the United States Magistrate Judge for report and recommendation. In his Report and Recommendations, the Magistrate Judge first reviewed the Lorizes' claims under 42 U.S.C. § 1983 that the approval and operation of the shooting range resulted in a taking of their property in violation of the Fifth Amendment to the U.S. Constitution. Because the Lorizes have not availed themselves of any of the state-provided remedies for the alleged inverse condemnation of their property, the Magistrate Judge recommended that this claim be denied as unripe and dismissed without prejudice for lack of subject matter jurisdiction.

Next, the Magistrate Judge considered the motion to dismiss by defendants, Valen, Young, and Powell, the Judges of the Ohio Court of Appeals for the Twelfth Appellate District who presided over the Lorizes' appeal of the decisions of the BZA and the Court of Common Pleas (the "Judges"),

4

and defendant Connanughton, a part-time county judge and a practicing attorney who represented the shooting range operators during the zoning proceedings before the BZA. Based on the decisions of the United States Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (holding that review of final judgments of the state courts can only be obtained by writ of certiorari to the United States Supreme Court), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 483-84 (1983) (holding that lower federal courts possess no jurisdiction over state court decisions), the Magistrate Judge found that the district court lacked jurisdiction to consider the Lorizes' challenges to the constitutionality of the judicial acts of the state courts to the extent the Lorizes seek a declaratory judgment regarding the zoning of the shooting range.

Moreover, the Magistrate Judge determined that the Judges are absolutely immune from individual liability for monetary relief for the performance of any "judicial act" unless there is a "clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *King v. Love*, 766 F.2d 962, 966-67 (6th Cir. 1985). Because each of the Judges acted in his judicial capacity when presiding over the Lorizes' zoning appeal, the Magistrate Judge recommended they be absolutely immune from the Lorizes' claims. Additionally, the Magistrate Judge found that the Lorizes' Complaint failed to state a claim against the Judges and defendant Connaughton because it does not allege that these defendants deprived them of a federally protected right as required by 28 U.S.C. § 1983. Thus, the Magistrate Judge recommended the Judges' and Connnaughton's motion to dismiss be granted.

Next, the Magistrate Judge turned to the motion to dismiss filed by defendants Keller, Keller, Simmons and Ridge Wind Quail Hunts, L.L.C. (the "Ridge Wind" defendants). Relying again on *Rooker* and *Feldman*, the Magistrate Judge found that the court was barred from re-litigating the

5

Lorizes' claim inasmuch as it seeks a declaration that the Ohio courts erred in approving the BZA's approval of the shooting range. Moreover, the Magistrate Judge determined that the Lorizes' claims under § 1983 must be dismissed because the Ridge Wind defendants are not state actors and cannot be found liable under § 1983. Even if these defendants willfully participated in a joint action with state actors conspiring to violate the Lorizes' constitutional rights, the Magistrate Judge found the Lorizes' complaint devoid of sufficient allegations to withstand a Rule 12(b)(6) motion. To the extent that the Lorizes allege that their due process rights were violated by the failure of some state official to prosecute the Ridge Wind defendants, the Magistrate Judge determined that the Lorizes have no constitutional right to have another person prosecuted. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 767 (2005). Accordingly, the Magistrate Judge recommended that the Ridge Wind defendants' motion to dismiss be granted.

Next, the Magistrate Judge turned to defendant Gray's motion for judgment on the pleadings. The crux of the Lorizes' allegations against defendant Gray, the Chief of the Ohio Division of Wildlife, center on the issuance of various permits to the Ridge Wind defendants. According to the Lorizes, these permits were issued in violation of their due process rights and resulted in an unlawful taking of their property. The Magistrate Judge, however, noted that the takings clause is not implicated until just compensation has been denied. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnston City*, 473 U.S. 172, 194, n. 13(1985). Because the Lorizes have not exhausted the available state procedures to seek just compensation, they are precluded from pursuing this § 1983 takings claim in federal court. Therefore, the Magistrate Judge recommended that defendant Gray's motion for judgment on the pleadings be granted.

Finally, although defendants Steeken, Bevington, Salman, Turner, Gates, Balsinger, J. Fox,

6

Zboril, Filpot, Daniel, M. Fox, Jolivette, Furmon, Dwyer, Jones and Piper have not moved for dismissal, the Magistrate Judge determined that the Lorizes' claims against these defendants fail for the same reasons they cannot succeed against the other defendants. Thus, the Magistrate Judge recommended that the Lorizes' Complaint be dismissed for failure to state a claim upon which relief can be granted against these non-moving defendants. With respect to all other pending motions, including the Lorizes' motion to amend their Complaint and for supplemental jurisdiction, the Magistrate Judge recommended that these motions be denied, and this action be terminated.

The Lorizes filed timely objections to the Report and Recommendation. Additionally, defendant Gray also filed his objections to the Report and Recommendation, arguing that it should be expanded to include additional reasons why he is entitled to judgment in this action. On February 24, 2006, the district court entered its Order Adopting Reports and Recommendation, noting that the court considered *de novo* the objections raised, and finding that the Magistrate Judge's recommendations are "entirely correct." The Court then adopted the Report and Recommendations, granted the motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) and for judgment on the pleadings pursuant to Rule 12(c), and dismissed, *sua sponte,* the Lorizes' claims against the non-moving defendants. This timely appeal followed.[2]

## II.     ANALYSIS

---

[2]The Lorizes request that the Court strike the defendants' briefs on two grounds. First, although defendant Gray filed a proper motion for extension of time to file his brief, which was granted by the Clerk on June 6, 2006, the Lorizes argue that defendant Gray's brief should be stricken because the motion for extension was not made in good faith. Second, the Lorizes argue that both appellee briefs should be stricken to the extent that they substantively challenge the district court's ruling, despite failing to file a cross appeal. Neither of these challenges are well taken, and the Lorizes' request is denied.

The district court dismissed the Lorizes' Complaint, in part, due to lack of subject matter jurisdiction over the Lorizes' claims. Essentially, the Lorizes' Complaint seeks federal district court review over the decision of the BZA to approve the shooting range, the decision of the Ohio Department of Wildlife to issue various permits associated with the shooting range, and the decisions of the Ohio courts to uphold the decision of the BZA. The district court held that the *Rooker-Feldman* doctrine barred federal jurisdiction over the Lorizes' claims. This court reviews *de novo* a district court's dismissal of a case on the grounds that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006), *petition for cert. filed*, (March 12, 2007)(No. 06-10156).

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction "to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). Only the United States Supreme Court may conduct federal review of state court proceedings. *See* 28 U.S.C. § 1257; *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 506 (6th Cir. 2000).

The Sixth Circuit applies a two-part test to determine whether the *Rooker-Feldman* doctrine applies to bar an action. First, the federal claim must be inextricably intertwined with the state-court judgment. In other words, "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," then the federal claim is inextricably intertwined with the state court judgment. *Peterson*, 305 F.3d at 391. "The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *McCormick*, 451 F.3d at 394. Second, there is no federal jurisdiction when the claim is "a

8

specific grievance that the law was invalidly - even unconstitutionally - applied in the plaintiff's particular case." *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)(citing *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998))

The *Rooker-Feldman* doctrine has very limited application. In both *Rooker* and *Feldman*, the Supreme Court dismissed the suits for lack of subject matter jurisdiction on the grounds that pursuant to 28 U.S.C.§ 1257, only the Supreme Court, and not the lower federal courts, has appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. The *Feldman* court noted that plaintiffs could still challenge state rules on constitutional grounds because such a challenge would not be asking the district courts to exercise appellate jurisdiction over a state court. *Feldman*, 460 U.S. at 487-88.

The Supreme Court recently revisited the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). The court in *Exxon Mobil* was faced with a case where there were parallel state and federal cases on the same issue. The Supreme Court held that the *Rooker-Feldman* doctrine applied only to:

> cases brought by state-court losers complaining of injuries cause by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284. The Sixth Circuit Court of Appeals has interpreted this ruling to mean that *Rooker-Feldman* doctrine only applies when a plaintiff complains of injury from the state court judgment itself. *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006); *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-46 (6th Cir.), *cert. denied*, 127 S.Ct. 261 (2006).

9

Clearly, **all** of the Lorizes' claims were inextricably intertwined with the state court decisions. In order for the district court to grant the requested declaratory or injunctive relief, or to award damages, the district court would be forced to review the decisions of the Ohio Division of Wildlife, the BZA, the Ohio Court of Common Pleas, and the Ohio appellate court. Moreover, the relief the Lorizes seek - a declaration that the state courts reached an improper result based on a faulty application of the law - is not a general challenge to the constitutionality of the state law, but rather a specific grievance over specific decisions. These claims are exactly the type the *Rooker-Feldman* doctrine intended to bar in the lower federal courts. Accordingly, the district court appropriately granted the defendants' motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction over the Lorizes' claims.

Although this Court finds that the *Rooker-Feldman* doctrine bars **all** of the Lorizes' claims against the defendants, the district court only applied the *Rooker-Feldman* doctrine to the Lorizes' claims against the Defendant Judges, John Connaughton, and the Ridge Wind defendants that were not based on the Fifth Amendment. The district court chose to separately analyze the Lorizes' Fifth Amendment claims and determined that because the Lorizes had not availed themselves of any state-provided remedies for the alleged inverse condemnation of their property, these claims are not yet ripe. As a result, the district court dismissed these claims without prejudice. For the reasons set forth above, however, this Court finds that all of the Lorizes' claims are inextricably intertwined with the state court judgments and are not a challenge to state rules on constitutional grounds, but rather a specific grievance over a specific decision. Essentially, the Lorizes are attempting to seek further review of the state court decisions by couching their Complaint in constitutional terms. *Rooker-Feldman* specifically prohibits this. Thus, the district court lacked subject matter jurisdiction over

all of the Lorizes' claims and erred by dismissing the Fifth Amendment claims without prejudice as unripe.

**III.    CONCLUSION**

For the reasons set forth above, the decision of the district court is AFFIRMED IN PART and REVERSED IN PART.  This matter is REMANDED to the district court for entry of judgment dismissing the entire action with prejudice for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.