*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0314P (6th Cir.)
File Name: 03a0314p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────

JAMES D. HOOD II,
    *Plaintiff-Appellant,*

*v.*
    No. 02-3402

RONALD T. KELLER; RICHARD
H. FINAN; KENNETH L.
MORCKEL,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00454—Algenon L. Marbley, District Judge.

Argued: August 1, 2003

Decided and Filed: September 3, 2003

Before: KENNEDY, GILMAN, and GIBBONS, Circuit
Judges.

─────────────

### COUNSEL

**ARGUED:** Nathan W. Kellum, CENTER FOR
INALIENABLE RIGHTS, Memphis, Tennessee, for
Appellant. Elise W. Porter, OFFICE OF OHIO ATTORNEY

GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:**
Nathan W. Kellum, CENTER FOR INALIENABLE
RIGHTS, Memphis, Tennessee, for Appellant. Elise W.
Porter, Tomi L. Dorris, OFFICE OF OHIO ATTORNEY
GENERAL, Columbus, Ohio, for Appellees.

  GIBBONS, J., delivered the opinion of the court, in which
GILMAN, J., joined. KENNEDY, J. (pp. 11-12), delivered
a separate dissenting opinion.

─────────────

### OPINION

─────────────

  JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-
appellant James D. Hood II brought suit in federal district
court against defendant-appellee Ronald Keller, in his official
capacity as the Executive Director of the Capitol Square
Review and Advisory Board; defendant-appellee Richard
Finan, in his official capacity as the Chairman of the Capitol
Square Review and Advisory Board; and defendant-appellee
Kenneth Morckel, in his official capacity as the
Superintendent of the Ohio State Highway Patrol, challenging
the constitutionality of Ohio Administrative Code § 128-4.
This provision requires that all persons who wish to use the
Ohio Statehouse grounds in Columbus, Ohio, first obtain a
permit to do so. In his complaint, Hood alleges that the
permit requirements set forth in Ohio Administrative Code
§ 128-4 are unconstitutionally overbroad, vague, and
discriminatory in violation of his rights to free speech and
free exercise of religion under the First and Fourteenth
Amendments to the United States Constitution. Hood claims
that the continued threat of enforcement of Ohio
Administrative Code § 128-4 "chills and deters plaintiff from
exercising his constitutional rights, causing irreparable harm
to plaintiff." Defendants-appellees filed a motion to dismiss
under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of
Civil Procedure. The district court concluded that the

*Rooker-Feldman* doctrine prevented it from exercising jurisdiction over this lawsuit, granted the motion under Rule 12(b)(1), and dismissed the case. For the reasons set forth below, we reverse the decision of the district court and remand for further proceedings.

## I.

Hood is a Christian pastor. Since 1982, Hood has engaged in "religious speech activities" on the Ohio Statehouse grounds, including "open air proclamation, oral communication, and written literature."

The Capitol Square Review and Advisory Board (Capitol Square) is an eleven-member body with the "sole authority to regulate all uses of the capitol square." O.R.C. § 105.41(E)(2). Pursuant to its statutory authority, Capitol Square has enacted a rule requiring all persons who wish to use the Ohio Statehouse grounds to obtain a permit before doing so. Ohio Administrative Code § 128-4-02(A) states:

Capitol buildings or grounds are available for use by the public for the purpose of governmental business, public meetings for free discussion of public questions, or for activities of a broad public purpose, provided the authorized procedure has been followed and appropriate approvals have been received.

The procedure for obtaining a permit is described in Ohio Administrative Code § 128-4-03, which provides, in relevant part:

(A) A request for use of capitol buildings or grounds shall be submitted in writing to the board no less than fifteen and no more than one hundred eighty days prior to the event. For good cause shown, requests may be submitted within less than fifteen days before the event.

\*\*\*

(C) The board will collect a nominal fee of twenty dollars--to cover the administrative cost of issuing a permit. The fee may be waived for good cause shown.

On May 18, 2000, Hood entered the Ohio Statehouse grounds and began to "preach and/or hand out religious tracts." An officer of the Ohio State Highway Patrol arrived on the scene and told Hood "that he could not preach on the public property nor hand out religious tracts without a permit to do so." Hood was asked to leave the property and refused. Later that day, Hood was charged with criminal trespass in violation of Ohio Revised Code § 2911.21(A)(2), which states:

No person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard.

Hood filed a motion to dismiss the state criminal charges. In his motion to dismiss, Hood argued that Ohio Revised Code § 2911.21(A)(2) and Ohio Administrative Code § 128-1 *et seq.* "violate due process, freedom of speech, and the free exercise of religion and as such are unconstitutional." On November 17, 2000, the Franklin County Municipal Court held that the challenged statutes were constitutional and denied Hood's motion to dismiss. A jury trial was held, and on November 29, 2000, Hood was found guilty of criminal trespass and fined one hundred dollars. Hood appealed the decision to the Court of Appeals of Ohio, Tenth Appellate District, but later filed a motion to dismiss his appeal, which was granted on April 2, 2001.

On May 16, 2001, Hood filed a Verified Complaint in the United States District Court for the Southern District of Ohio against defendants-appellees. The complaint alleges that: (1) "[t]he continued threat of enforcement of Chapter 128-4

permit requirement and charge of criminal trespass for being on public grounds, chills and deters plaintiff from exercising his constitutional right, causing irreparable harm to plaintiff;" (2) "[t]he permit requirements set forth in Chapter 128-4 are unconstitutionally overbroad, vague, and discriminatory, as applied and construed, in violation of freedom of speech under the First and Fourteenth Amendments to the United States Constitution;" (3) "[t]he permit requirements set forth in Chapter 128-4 are unconstitutionally overbroad, vague, and discriminatory, as applied and construed, in violation of free exercise of religion under the First and Fourteenth Amendments to the United States Constitution;" and (4) that defendants-appellees "impermissibly interfered with the exercise of Pastor Hood's rights of conscience and religion and freedom of speech guaranteed by Section 1.027 and 1.11 of the Ohio Constitution."[1] Hood requests the following relief: (1) "a judgment and decree declaring that Chapter 128-4 of the Ohio Administrative Code and Section 105.41 are unconstitutional as applied to plaintiff's activities in this case;" (2) "a preliminary and permanent injunction enjoining defendants, their agents, employees and all persons in active concert or participation with them, or any of them, from applying or enforcing or attempting to enforce against the plaintiff Chapter 128-4 permit requirement for preaching and/or handing out religious tracts;" (3) compensatory damages; and (4) reasonable costs and expenses.

On July 16, 2001, defendants-appellees filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court found that the

---

[1] In his complaint, Hood also set forth claims of malicious prosecution and false arrest. Hood voluntarily withdrew his claim of malicious prosecution prior to the district court's ruling on defendants-appellees' motion to dismiss. In its March 15, 2002, order, the district court dismissed Hood's claim of false arrest, noting that Hood "failed to respond to the Defendants' arguments" and "seems to have conceded that the claim of false arrest is without merit." Hood has not appealed the district court's dismissal of the false arrest claim.

*Rooker-Feldman* doctrine prevented the district court from exercising subject matter jurisdiction over Hood's claims, and entered judgment for defendants-appellees. On April 8, 2002, Hood filed his notice of appeal.

## II.

This court reviews *de novo* a district court's grant of a motion to dismiss for lack of subject matter jurisdiction. *Tropf v. Fid. Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002), *cert. denied* 123 S.Ct. 887 (2003).

### A.

The district court held that the *Rooker-Feldman* doctrine bars Hood's claims in this lawsuit. This decision was incorrect.

The *Rooker-Feldman* doctrine has evolved from two Supreme Court cases which establish that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The purpose of the doctrine is to prevent "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Tropf*, 289 F.3d at 936-37 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

The *Rooker-Feldman* doctrine bars district courts from hearing both challenges to state court judgments and claims that are "inextricably intertwined" with state court judgments. *See Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). "In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other

issues was incorrect, federal courts do not have jurisdiction." *Pieper v. Am. Arbitration Ass'n*, — F.3d. —, 2003 WL 21663246, at *2 (6th Cir. July 11, 2003); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."). The *Rooker-Feldman* doctrine, however, does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely "a general challenge to the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular state case. *Tropf*, 289 F.3d at 937 (quoting *Catz*, 142 F.3d at 293). In determining the applicability of the *Rooker-Feldman* doctrine, federal courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead "must pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (quoting *Kenmen Eng'g*, 314 F.3d at 476).

In his complaint, Hood claims that "[t]he continued threat of enforcement of Chapter 128-4 permit requirement and charge of criminal trespass for being on public grounds chills and deters [him] from exercising his constitutional rights," thereby causing him irreparable harm. However, Hood has not challenged his state court criminal trespass conviction. As Hood correctly observes, the complaint contains "no demand to set aside the verdict or the state court ruling." Instead, Hood seeks injunctive and declaratory relief prohibiting defendants-appellees from using "preaching and/or handing out religious tracts" as a basis for "enforcing or attempting to enforce" Ohio Administrative Code § 128-4. Because Hood does not seek to have the district court overturn his November 29, 2000, conviction in Franklin County Municipal Court, the *Rooker-Feldman* doctrine is inapplicable to this lawsuit. *See Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001) ("When

the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit." (internal quotation marks omitted)).

In *Buckley v. Illinois Judicial Inquiry Board*, 997 F.2d 224 (7th Cir. 1993), the Seventh Circuit examined the applicability of the *Rooker-Feldman* doctrine to a similar situation. The Illinois Judicial Inquiry Board filed charges against Robert Buckley, an Illinois state court justice, for violating a state rule regulating the speech of candidates for judicial office. *Id.* at 226. The Illinois Courts Commission ruled that Buckley had violated the rule in his 1990 judicial campaign, and according to the Illinois state constitution, the commission's decision was final such that Buckley had no avenue for appeal within the state court system. *Id.*

Buckley filed suit in federal district court, not seeking to overturn the final decision from the Illinois Courts Commission, but instead seeking a declaratory judgment that the state rule regulating the speech of judicial candidates is unconstitutional. The Seventh Circuit held that:

Justice Buckley's challenge to the constitutionality of Illinois Supreme Court Rule 67(B)(1)(c) does not entail a challenge to the ruling by the Illinois Courts Commission that he violated the rule. It is true that if as in *Leaf v. Supreme Court*, 979 F.2d 589 (7th Cir.1992), Buckley were seeking not only to clear away the rule so that he could run in future judicial elections unimpeded by it but also to obtain relief against the discipline imposed upon him, he would be in effect appealing from the Illinois Courts Commission's judgment (though that would be only a part of what he was doing), which *Rooker-Feldman* forbids him to do. But he is not asking us to expunge the disciplinary finding or do anything else to correct or revise the Commission's judgment. He is not, in short, asking for any relief of the kind an appellant

seeks – relief directed against a judgment. Of course that judgment, which by virtue of *Rooker-Feldman* Justice Buckley cannot attack in this suit, might by principles of *res judicata* bar him from maintaining this suit. But *res judicata* is a defense, not a limitation on jurisdiction. It must be pleaded. It has not been.

*Id.* at 227.

As in *Buckley*, if Hood were seeking to obtain relief directed against his November 29, 2000, conviction, instead of simply seeking to clear away the allegedly unconstitutional permit requirement so that he can preach and hand out religious tracts on Capitol grounds in the future unimpeded by the permit requirement, then the *Rooker-Feldman* doctrine would apply. But Hood is not asking the district court to expunge his state court conviction. Consequently, the *Rooker-Feldman* doctrine does not bar this claim.

Applying the *Rooker-Feldman* doctrine, the district court observed that "the state court specifically ruled on the precise issue presented to this court." *Hood v. Keller*, No. 01-CV-454, 2002 WL 483560, at *6 (S.D. Ohio March 15, 2002). The district court appears to have confused the *Rooker-Feldman* doctrine with the concept of preclusion. As the Seventh Circuit has noted, "although the *Rooker-Feldman* doctrine and principles of preclusion may be easily confused with each other because they both define the respect one court owes to an earlier judgment, the two are not coextensive." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 703 (7th Cir. 1998). Explaining the difference between the *Rooker-Feldman* doctrine and preclusion, the Seventh Circuit has stated:

The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district

court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*GASH Assoc. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993); *see also Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002) ("Rather than prohibiting the relitigation of issues and claims (the province of the preclusion doctrines), *Rooker-Feldman* protects state-court judgments from impermissible appellate review by lower federal courts.").

In this case, Hood does not seek to set aside his conviction in Franklin County Municipal Court. Consequently, the *Rooker-Feldman* doctrine does not apply. Although the fact that Hood raised the same constitutional issue in the state court proceeding could potentially justify dismissing this lawsuit in whole or in part, we note that "absent exceptional cases or particular circumstances, a federal appellate court will not consider issues not passed on by the district court." *United States v. State of Ohio*, 957 F.2d 231, 234 (6th Cir. 1992) (quotation omitted). We thus decline to reach these issues and instead leave them for the district court to resolve on remand.

### III.

For the foregoing reasons, we reverse the decision of the district court and remand for further proceedings.

———————

**DISSENT**

———————

KENNEDY, Circuit Judge, dissenting. Because I believe the district court properly applied the *Rooker-Feldman* doctrine, I respectfully dissent.

Plaintiff made a general challenge as well as an applied challenge to the constitutionality of the ordinance in the state-court proceeding, the state-court judgment addressed and confirmed the constitutionality of the ordinance as applied to plaintiff and generally, and plaintiff did not appeal.

It is clear that plaintiff is making the same applied challenge to the constitutionality of the ordinance in his federal complaint here, and on that basis the district court applied the *Rooker-Feldman* doctrine. While plaintiff does not directly ask that his conviction be set aside, he does complain that defendants-appellees "impermissibly interfered with the exercise of Pastor Hood's rights of conscience and religion and freedom of speech guaranteed by Section 1.027 and 1.11 of the Ohio Constitution, and asks that "a judgment and decree declaring that Chapter 128-4 of the Ohio Administrative Code and Section 105.41 are unconstitutional as applied to plaintiff's activities in this case." The activity described in the complaint is the May 18, 2000 activity in which the state "unconstitutionally stopped plaintiff's speech." To read plaintiff's federal complaint as making only a facial challenge would require us to disregard the fact that plaintiff seeks injunctive relief only for himself and a declaration that his conduct as described in the complaint was constitutionally protected. To grant him the relief sought would require us to consider the same issues previously decided in Ohio state court; i.e., the constitutionality of the ordinance as applied to plaintiff's conduct on May 18, 2000. Plaintiff's general challenge is "inextricably intertwined" with the state court proceeding. Further, plaintiff made a general challenge in state court. The state court has actually ruled on his general challenge. As the district court noted, the issue was explicitly decided in the criminal case. Plaintiff cannot seek to have it relitigated here.